# Commonwealth v. Kargbl

C.P. of Lehigh County, no. 1794 of 1998.

*Tejan Mohamed Kargbl,* pro se.

PLATT, *P.J.,* February 27, 2003—The defendant, Tejan Mohamed Kargbl, a/k/a Terry Johnson, was convicted by a jury in this case of two counts of attempted criminal homicide, four counts of robbery, two counts of aggravated assault, two counts of simple assault, two counts of recklessly endangering another person, one count of possession of an instrument of crime and one count of criminal conspiracy. He was sentenced to an aggregate term of imprisonment of not less than 10 nor more than 20 years in a state correctional institution, ordered to pay the costs of prosecution and to make restitution to his victims. This sentence was to be served consecutively to any other sentence the defendant was then serving. His conviction has been affirmed by the Superior Court of Pennsylvania. Defendant has filed two collateral attacks on this conviction. In the first, I granted relief to permit him to file an appeal nunc pro tunc, because his first direct appeal was dismissed due to inaction by his former counsel. The second, I dismissed as untimely, and the Superior Court affirmed.

On November 1, 2002, defendant filed a pro se "motion to stop Act 84[1] 20 percent deductions" with the clerk of courts criminal, and on November 15, 2002, without a hearing, I denied and dismissed that motion. The reason for the denial can be simply stated. If review of the actions of the Department of Corrections under Act 84 is necessary, jurisdiction to do so is vested in the Commonwealth Court of Pennsylvania and not in the courts of common pleas.

On December 10, 2002, defendant filed a notice of appeal to the Commonwealth Court of Pennsylvania, from the order dismissing his motion. On January 16, 2003, I received a "statement of issues" on appeal from the defendant. In that statement, defendant asserts: (1) that the court dismissed his motion "without a finding . . . of his ability to pay;" and, (2) that the clerk of courts "requested collection . . . from his prison account without an order by the court . . . [in violation of] defendant's due process rights."

In ¶3 of his motion, defendant asserted that the Department of Corrections has been making deductions of 20 percent of his prison earnings deposited in his account since November 5, 1998. He did not indicate a total amount of those alleged deductions or anything else with regard to the historical expenditures from or balances in that account over time. Appended to that motion, as exhibit A, was a printout of what defendant asserts is the last monthly statement received for the account. It reflects two "Act 84 transactions." On June

---

1. As here relevant that means section 9728(b)(5) of the Sentencing Code, 42 Pa.C.S. §9728(b)(5).

5, 2002, after prison wages in the sum of $67.20 were credited to defendant's account, 20 percent of that amount, $13.44, was deducted, leaving a balance of $105.95 in the account. On June 19, 2002, after prison wages in the sum of $1.68 were credited to defendant's account, 20 percent of that amount, $0.34, was deducted, leaving a balance of $10.18 in the account. The account had a beginning balance of $52.29, and an ending balance as stated above of $10.18. The other monies in the account were spent that month for commissary items and for sneakers. In his in forma pauperis statement, appended to the motion, defendant asserted that his prison earnings equal approximately $67 per month.

A review of the trial court's official file in this case (this file is maintained by the clerk of courts criminal, and contains all official documents and correspondence relative to the case) reveals that, contrary to the assertions in the defendant's motion, at ¶¶2 and 7, that the clerk of courts requested a 20 percent deduction from the prison wages deposited in defendant's inmate account, there is no document in the official file reflecting a request that any deduction be made. The file does contain, however, the sentencing sheets, as well as copies of form DC 300B (court commitment), setting forth the sentence, costs and restitution ordered to be paid by the defendant. These documents are required to be sent with every inmate sentenced to the state.[2] There is only one piece of

2. See 42 Pa.C.S. §9764. In addition, 42 Pa.C.S. §9728(b)(3) specifically provides that "[t]he county clerk of courts shall, upon sentencing, pretrial disposition or other order, transmit to the Department of Probation of the respective county or other agent designated by the county commissioners of the county with the approval of the presi-

correspondence in the official file relative to the 20 percent deduction, and that is a letter from the defendant to the clerk dated October 8, 1999. In that letter defendant complains that the deductions under Act 84 are being retroactively, and therefore illegally, applied in his case.[3]

The Department of Corrections on October 14, 1998, issued a policy statement, DC-ADM-005, effective October 16, 1998, entitled "Collection of inmate debts,"[4] which provides, at part VI, D, procedures for collection of monies from inmate accounts pursuant to Act 84:[5]

"D. Collection of restitution, reparations, fees, costs, fines and penalties.

---

dent judge of the county and to the county correctional facility to which the offender has been sentenced or to the Department of Corrections, whichever is appropriate, copies of all orders for restitution and amendments or alterations thereto, reparation, fees, costs, fines and penalties."

3. Defendant asserts: (1) "Act 84 came into affect [sic] October 16, 1998, [after I was sentenced] ... which makes me exempt from Act 84." (2) "I wrote a letter to the superintendent of the institution that I'm serving my sentence. And he informed me that he must honor all court orders. I would appreciate it very much if you could send me a copy of that court order."

The retroactivity argument has been resolved against the defendant. See *Commonwealth v. Ralston,* 800 A.2d 1007 (Pa. Commw. 2002); *Commonwealth v. Baker,* 782 A.2d 584 (Pa. Super. 2001); *Sweatt v. Department of Corrections,* 769 A.2d 574 (Pa. Commw. 2001). The only court order entered in this case regarding costs or restitution, as previously noted, is the sentencing order itself.

4. The guidelines are published on the Department of Corrections website. See http://www.cor.state.pa.us/policiesDC-ADM%20005%20 Collection%20of%20Inmate%20 Debts.pdf.

5. 42 Pa.C.S. §9728(b)(5) specifically requires the department to adopt guidelines for Act 84 collection.

"(1) When the county clerk of court provides a copy(ies) of an order(s) for restitution, reparation, fees, costs, fines, and/or penalties associated with the criminal proceedings, the Records Office shall file the original and shall forward a copy of the order to the Business Office of the institution having custody of the inmate. The court order, or supporting information, must indicate the status of the debt including the current balance due and any special conditions which would effect payments.

"(2) The Business Office, through inmate account deductions, makes:

"(a) Initial payments of 20 percent of the inmate's account balance.

"(b) Subsequent payments of 20 percent of all of the inmate's monthly income provided that the inmate has a balance which exceeds $10.

"(3) The Business Office shall send the funds deducted to the county probation department or other designated agency."

The 20 percent deduction is, therefore, clearly and purely a result of Act 84 itself and of this policy statement rather than a deduction or percentage deduction initiated by the clerk of courts. It is the same percentage amount deducted in all of the cases which have been litigated under Act 84. It is also the same percentage as was provided for by our legislature in section 6602(c) of the Judicial Code (prisoner filing fees), 42 Pa.C.S. §6602(c), for deduction from inmate accounts for payments of balances due for filing fees in civil prison condition litiga-

tion initiated by inmates. ("Following payment of an initial partial filing fee, the prisoner shall make monthly payments of 20 percent of the preceding month's income credited in the prisoner's account. The prison having custody of the prisoner shall deduct payments from the prisoner's account when the prisoner's account balance exceeds $10 until the filing fees are paid in full.") Interestingly, the Pennsylvania Act dealing with prisoner civil filing fees seems to be patterned after the Federal Prison Litigation Reform Act, Pub. L. no. 104-134, 110 Stat. 12321 (April 26, 1996), 28 U.S.C. §1915, which employs a 20 percent standard as well. See *Smith v. Urban,* 928 F. Supp. 532 (E.D. Pa. 1996).

Section 9728(b)(5) to the Sentencing Code, 42 Pa.C.S. §9728(b)(5), was added by Act 84, and provides:

"(5) The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation. Any amount deducted shall be transmitted by the Department of Corrections or the county correctional facility to the probation department of the county or other agent designated by the county commissioners of the county with the approval of the president judge of the county in which the offender was convicted. The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph."

It is within this factual and legal context that I determined to deny defendant's motion without a hearing. In his motion, defendant, made the following assertions:

"(1) . . . that the 20 percent deductions from his prison account creates a financial burden that he is unable to afford in that he only makes $0.42 per hour and that there needed to be a determination before an issuing authority of his ability to pay that amount before the clerk of courts could request 20 percent of his monies. 42 Pa.C.S. §8127(a); 42 Pa.C.S. §9730(b); Pa. R.Crim.P. 706 (setting forth the procedure governing a defendant's failure to pay fines or costs in a criminal case)." ¶4, defendant's motion.

"(2) . . . the clerk of courts failed to apply to the trial court for an enforcement action for unpaid fines, in which the enforcement is subject to the statutory requirement that the convicted offender be afforded a hearing. 42 Pa.C.S. §9772. See: *Commonwealth v. Fleming,* [804 A.2d 669 (Pa. Super. 2002)]; *Boofer v. Lotz,* 797 A.2d 1047 (Pa. Commw. 2002)." ¶5, defendant's motion.

In these paragraphs of his motion, defendant assumes incorrectly that the deductions from his prison account were made as a result of some action by the clerk of courts who was attempting to collect fines, costs or restitution. This, of course, is not what occurred, and is contrary to the official court files in the within case, as was previously indicated.[6] Nor would that be what would happen in any case of a prisoner sentenced to a state correctional institution, where the deductions are truly made pursuant to Act 84. Act 84 deductions, for state correctional prisoners, are made by the Department of Corrections as

---

6. A court may take judicial notice of its records in the case under consideration. *Hawkey v. Workmen's Compensation Appeal Board,* 56 Pa. Commw. 379, 382 n.3, 425 A.2d 40, 42 n.3 (1981).

the result of the mandate of that legislation itself, and in accordance with the guidelines the Department of Corrections was directed to adopt by that Act, specifically, DC-ADM-005. When the Department of Corrections proceeds under Act 84, there need be no request or collection action by the criminal division of the court of common pleas or its clerk. The documents transmitted by the clerk with the sheriff upon the transfer of a prisoner to a state correctional institution contain all of the information the Department of Corrections needs to commence deductions under Act 84.

"In *Commonwealth v. Fleming*, 804 A.2d 669 (Pa. Super. 2002), the trial court had, without a hearing, entered an order directing the Department of Corrections to garnish funds in Fleming's inmate account for payment of his criminal case costs, fines and restitution. The trial court purportedly did so in reliance upon Act 84 (42 Pa.C.S. §9728(b)(5). The *Fleming* court held that where a trial court enters such an order, it is, in reality, an enforcement action to collect fines related to a criminal sentence and, under 42 Pa.C.S. §9772, must be preceded by a hearing.[7] However, the Superior Court then specifically noted:

---

7. Because the trial court's order was an action to enforce a sentence, the court in *Fleming* at 670 n.3, stated: "Enforcement orders are those directives which attend a criminal sentence. Jurisdiction over appeals from enforcement orders rests with this court under 42 Pa.C.S. §742. Consequently, our consideration and resolution of this appeal is not inconsistent with our comments in *Commonwealth v. Baker,* 782 A.2d 584 (Pa. Super. 2001), that an action taken by the Department of Corrections that affects an inmate's account constitutes a civil action, a challenge to which belongs in the Commonwealth Court. See: *Baker, id.* at 584."

"It merits emphasis, however, that the prerogative for collection of such monies is not solely that of the county district attorney since Act 84 vests such a prerogative in the correction authorities as well: . . . [Quoting 42 Pa.C.S. §9728(b)(5)].

"Thus it is clear that the statute expressly authorizes correction officials to make deductions from an inmate's account, and does not impose prior court authorization as a threshold condition. See: *Sweeney v. Lotz,* 787 A.2d 449 (Pa. Commw. 2001).

"Therefore, although we are compelled to vacate the trial court orders, this opinion must not be construed as affecting the authority conferred by Act 84 upon correction officials to make appropriate deductions and payments from the personal account of appellant." *Id.* at 670-71.

As a common pleas judge, I have no jurisdiction over the actions of the Department of Corrections acting pursuant to Act 84. That includes the department's actions in adopting DC-ADM-005, or in its collection from the account of any specific prisoner in a state correctional institution. Such review is available only in the Commonwealth Court of Pennsylvania. See 42 Pa.C.S. §§761 and 763; *Commonwealth v. Baker,* 782 A.2d 584 (Pa. Super. 2001); *Sweatt v. Department of Corrections,* 769 A.2d 574 (Pa. Commw. 2001); *Aultman v. Department of Corrections,* 686 A.2d 40 (Pa. Commw. 1996).

Additionally, no hearing was required in the common pleas court because there was no action taken by the common pleas court, the district attorney, county solicitor or clerk of courts, warden or any other local agency within

this court's jurisdiction, to collect, or to initiate any collection of, any fines, costs or restitution from defendant's inmate account. This immediately distinguishes the case at bar from *Boofer v. Lotz,* 797 A.2d 1047 (Pa. Commw. 2002), *alloc. granted,* (no. 343 WAL 2002, Jan. 17, 2003),[8] where the clerk of courts initiated the collection by specifically requesting that the Department of Corrections deduct 20 percent of Boofer's prison earnings deposited in his inmate account for payment of costs, fines and restitution. *Boofer,* 797 A.2d at 1049.[9] Therefore in *Boofer,* despite the fact that the Department of Corrections could have acted on its own initiative under Act 84, the Commonwealth Court panel apparently found that the action of the local clerk in requesting a 20 percent deduction, triggered a right to a hearing in the Court of Common Pleas of Butler County and treated this as a garnishment proceeding. The clerk's action in *Boofer,* it could be argued, was therefore, analogous to the collection action instituted by the court itself in *Commonwealth*

---

8. The allegations in ¶4 of defendant's motion were taken almost verbatim from *Boofer,* 757 A.2d at 1050: "that the 20 percent deduction from his inmate account creates a financial burden that he is unable to afford and that there needed to be a determination of his ability to pay that amount before Lotz could request 20 percent of his earnings."

9. Admittedly, I have some inherent difficulty even in those circumstances where a clerk, *e.g.,* would request the department to make deductions, since as I read 42 Pa.C.S. §9728(b)(5), it is still the department and not the clerk making the deduction determinations. To that extent I believe the analysis in *Fleming* to be more consistent with the statute than that in *Boofer.* In any event, because of this, and because it is the Department of Corrections that makes the deductions and not the clerk, if review is necessary, it could only occur in the Commonwealth Court rather than the common pleas court.

*v. Fleming,* 804 A.2d 559 (Pa. Super. 2002), where the Superior Court distinguished such action from the action of the Department of Corrections under Act 84 which occurred in the case at bar.[10] Simply stated, the collection in the case before me was initiated, not by the clerk or by the court, but by the Department of Corrections under 42 Pa.C.S. §§9728(b)(5) and DC-ADM-005. Furthermore, in a post-*Boofer* opinion, *Commonwealth v. Ralston,* 800 A.2d 1007 (Pa. Commw. 2002), where again apparently the clerk of courts in Butler County "initiated" the collection action without any hearing, but where the Commonwealth Court upheld the deductions nevertheless; and, although in a slightly different context, recognized that the sentencing hearing and order provided the necessary predicate to the clerk's action (or the process due defendants in their criminal cases):

"Lastly, appellant contends that the clerk had no authority to collect the costs and fines because no judgment had been entered against him. Contrary to the contention of appellant, the trial court entered a judgment of sentence that included payment of the fines and costs. Accordingly, the argument is without merit." *Id.* at 1010. (footnote omitted)

---

10. As I read *Fleming,* the Superior Court clearly recognizes that 42 Pa.C.S. §8127 hearings are not required in true 42 Pa.C.S. §9728(b)(5) deduction cases. It appears equally obvious to this writer that the provisions for the collection of *civil* judgments (garnishment) entered on criminal sentences pursuant to 42 Pa.C.S. §§9728(b)(1) and (2) would be subject to the statutes and rules applicable to the collection of *civil* judgments. Act 84 as drafted by our legislature neither contemplates nor requires a hearing prior to the deductions from a prisoner account.

I cited both *Ralston* and *Fleming* in my order of November 15, 2002, denying the defendant's motions to stop Act 84 20 percent deductions and for appointment of counsel. The Court of Common Pleas of Lehigh County clearly had no jurisdiction over this matter.[11]

In addition to this clear lack of jurisdiction, the defendant's motion failed to state a claim warranting a hearing or relief.

Defendant does allege in his motion that the 20 percent deduction from his prison account earnings "creates a financial burden that he is unable to afford in that he makes $0.42 per hour." That allegation should be briefly addressed. The department's DC-ADM-005 provides for an initial payment of 20 percent of the inmate's account balance for restitution, reparation, fees, costs, fines and penalties, and subsequent payments of 20 percent of the inmate's monthly income provided the inmate has a balance which exceeds $10. The 20 percent deductions and the $10 balance, as I previously indicated, coincide with legislation adopted both by the Pennsylvania legislature and the United States Congress for collecting court fees for the filing of prison condition litigation and section 1983 civil rights actions. Deductions of this percentage and with the minimum balance requirement seem reasonable and fair when one takes into consideration precisely the fact that these are prison earnings, which are minimal, and that the defendant is a prisoner, whose necessities are provided to him. What was said in *Sweeney v. Lotz,* 787 A.2d 449 (Pa. Commw.

---

11. Common pleas would have Act 84 jurisdiction over collections from persons sentenced to the county prison.

2001), regarding a claim that the $300 exemption for judgment debtors under 42 Pa.C.S. §8123(a), should apply to deductions made by the Department of Corrections from inmate accounts, bears repeating here:

"Appellant points to section 8123(a) of the Judicial Code, addressing a $300 exemption claim for judgment debtors. However, . . . this section applies to civil judgments and other liens. In contrast, section 9728(b)(5) of the Sentencing Code applies to the collection of costs, fines and restitution in the context of a criminal proceeding. Additionally, . . . the exemption provided for in this section was to afford the judgment debtor the necessities of life, *i.e.,* food, clothing and shelter. See *Beneficial Consumer Discount Co. v. Hamlin,* 263 Pa. Super. 393, 398 A.2d 193 (1979). Such concerns are not relevant in the present situation, as the individual will continue to be afforded these necessities as a ward of the Commonwealth. Further, our Superior Court has previously indicated that the Commonwealth has a rational and legitimate interest in the rehabilitation of the criminal and in providing compensation to the victim of wrongful conduct. See *Commonwealth v. Colon,* 708 A.2d 1279 (Pa. Super. 1998)." (footnote omitted)

Under all of the circumstances the deductions seem reasonable, appropriate and non-confiscatory. Were a challenge to be launched, it should be in the form of a challenge to DC-ADM-005 itself, or in its application, which was not done in this case. In addition, and without retreating from my earlier position that section 9728(b) (5) of the Sentencing Code, 42 Pa.C.S. §9728(b)(5), the here relevant portion of Act 84, does

not implicate the garnishment and hearing rights set forth elsewhere in the law, I feel compelled to note because it was mentioned in *Boofer*, that clearly in the case at bar there is no need for a hearing to determine if defendant's earnings have been attached for alimony, child support, unpaid rent or educational debts. There is no allegation in the defendant's motion of any alimony, child support, unpaid rent or educational debt owed, and such deductions for same do not appear in exhibit A, appended thereto. See footnote 8, *Boofer*, 797 A.2d at 1051.

One final point should be discussed. As indicated earlier, the Pennsylvania Supreme Court has granted allocatur in the *Boofer* case. In its order of January 17, 2003, granting allocatur, and filed to no. 343 WAL 2002, our Supreme Court limited the issues under the petition. One of them relates to the fact that "there is no statutory requirement [in Act 84] to hold such a hearing." As a general proposition, due process hearings are only required, in these situations where state law establishes such a right. Stated differently, if there is no property interest in prison earnings or accounts under state law, then there is no protection of such earnings or accounts under the "due process" clause of the 14th Amendment of the United States Constitution such that there are hearing rights absent an expression of such rights in the statute or the guidelines. See federal court cases cited *infra*.

Again, in *Sweeney v. Lotz*, 787 A.2d 449, 452 (Pa. Commw. 2001), the court stated:

"In sum, section 9728(b)(5) of the Sentencing Code does not treat similarly situated individuals differently. Rather, this section merely provides the procedural

mechanism for collecting items such as costs, fines and restitution from incarcerated judgment debtors. See *Sweatt v. Department of Corrections,* 769 A.2d 574 (Pa. Commw. 2001). Furthermore, even if we were to find a distinction in treatment, the Commonwealth has a rational basis for the same that advances a legitimate Commonwealth interest, *i.e.,* rehabilitation of the criminal and compensation to the victim of wrongful conduct. . . . Thus, we cannot say that the trial court erred as a matter of law in failing to find that section 9728(b)(5) of the Sentencing Code was unconstitutional in that it denied appellant the right to equal protection."

Senior Judge Barbieri, in *Mays v. Fulcomer,* 122 Pa. Commw. 555, 552 A.2d 750 (1989), a case involving a challenge to a disciplinary assessment against an inmate's earnings account of $.10 per hour for restitution for monies he misappropriated from the Graterford Prison Jaycees, made an astute evaluation of the nature of so-called "prison wages." The court held that "the remuneration which Mays receives for prison labor does not constitute wages for purposes of section 8127 of the [Judicial] Code, [42 Pa.C.S. §8127]." *Id.* at 560, 552 A.2d at 753. The Commonwealth Court then went on to state:

"In *Harris v. Yeager,* 291 F. Supp. 1015 (D.N.J. 1968), *aff'd per curiam,* 410 F.2d 1376 (3d Cir. 1969), the United States District Court for the District of New Jersey granted a motion for summary judgment filed in response to a complaint by an inmate of the New Jersey State Prison. The inmate claimed the prison's policy of withholding a certain percentage from an inmate's monthly earnings until the sum of $10 had been accumulated and

depositing the funds in the inmate's account until his release was a violation of his civil rights. There, the court held that the inmate had no legal right to these funds as the remuneration did not constitute wages 'in a realistic economic employer-employee relationship.' *Id.* at 1017. Instead, they were determined to be a gratuitous payment authorized by the state as a rehabilitative tool. See also, *Alexander v. Sara Inc.,* 721 F.2d 149 (5th Cir. 1983), holding that inmates of state penitentiary performing work for a private profit making entity on prison grounds were not covered by the Fair Labor Standards Act of 1938, 29 U.S.C. §§201-219, in part because there was no employer/employee relationship as inmate labor belongs to the prison.

We adopt the reasoning of the court in *Harris* and hold that section 8127 of the Code does not prohibit the Commonwealth from withholding a portion of an inmate's compensation to satisfy a restitution penalty imposed as a result of a prison disciplinary hearing." *Id.* at 560-61, 552 A.2d at 753. (footnote omitted)

The federal cases which have analyzed similar claims either do not recognize a property interest in prison earnings, or when they do, find the interest minimal and one which can be trumped by a legitimate government interest in paying costs or restitution. See *e.g., Reynolds v. Wagner,* 128 F.3d 166 (3d Cir. 1997) (involving "involuntary" deductions from Berks County inmates prison accounts to pay for medical care); *James v. Quinlan,* 866 F.2d 627 (3d Cir. 1989) (upholding 50 percent deductions for court ordered restitution, fines and costs, obligations to the United States and the like, and finding no

liberty or property interest in job assignments); *Dorman v. Thornburgh,* 955 F.2d 57 (D.C. Cir. 1992) (no liberty interest within due process protection in prison employment; discretion vested in prison officials to set terms and conditions of prison employment, and hence no right to enjoin program mandating commitment of a percentage of prison earnings to court-ordered obligations); *Hrbek v. Farrier,* 787 F.2d 414 (8th Cir. 1986) (inmates have no constitutionally protected interest in the wages earned while in prison); *Hampton v. Hobbs,* 106 F.3d 1281 (6th Cir. 1997) (inmates required to pay fees for filing federal suits under Prison Litigation Reform Act, 28 U.S.C. §1915, provided with due process by the statute limiting deductions for court filing fees and providing for payment from future prison earnings).

The Pennsylvania Act 84 provision vested in the Department of Corrections the drafting of guidelines for the collections of fines, costs and restitution from state incarcerated inmates. Those guidelines recognize a right in the inmate to a certain minimal balance in his account. The guideline amount is patterned after other legislation, both state and federal, in that regard, and would seem under the case law standards to provide the minimal protection to which inmates may be entitled. All restitution, fines and costs, were determined by a court after a hearing. If the inmate still has a legitimate right to be asserted, it seems that the best vehicle for asserting such claim is through the existing prison grievance procedures and not through a court hearing in venue outside the institution. Since there is no indication in the instant case that the defendant grieved the deductions when first

made, I would have denied the motion on that basis as well as those previously indicated. It must be remembered as well that the Pennsylvania Legislature did not provide for a right to a hearing concerning these deductions, nor did it create any property rights in prison employment or earnings. Such matters are best left to the sound discretion of correctional authorities.